# Cover Sheet
## Complaint

Calvette Brown (PROSE)

    Petitioner

      VS

Illinois Department of Human Services
Business Enterprise for the Blind
Bureau of Blind Services, Department
of Rehabilitation,

United States Department of Education
(at el) Rehabilitation Services Administration

**FILED**

JUN 1 7 2016

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Calvette Brown
P.O. Box 1747
Riverside, Illinois
60546
708-256-0828
Calvette31@aol.com

1:16-cv-06295
Judge Virginia M. Kendall
Magistrate Judge Maria Valdez

## QUESTIONS PRESENTED FOR REVIEW

1) Whether the removal of blind vendors from Randolph Sheppard

   vending location awarded via permanent contractual agreements

   before being afforded a fair hearing in violation of due process clause

   of the 5th and 14th amendments afforded by the United States

2) Whether the civil rights clause of 1964 are violated via the Randolph

   Sheppard program during its selection processes for awarding

   contracts by allowing conflicts of interests, violence and threats from

   elected committee members towards blind vendors, state officials, and

   disparity of treatment between non elected vendors vs. elected officials,

   non-caucasion minority blind vendors in relation to caucasion and male

   vendors.

3) Whether Respondent violated Disability act of 1974 (ADA) by allowing

   acts, rules and regulations implored by the Illinios State licensing agency

   and the Illinois committee of blind vendors to hinder blind vendors who

   are not part of the committee, women and minority blind vendors at large

   in maximizing their vocational rehabilitation and earning potential as

   blind vendors by not implementing federal Randolph Sheppard rules and

   regulations in administering the program.

4) Whether Respondent violated Disability act of 1974 (ADA) by not

affording non elected blind vendors, women and minority vendors fair representation/advocacy afforded for all blind vendors from elected committee officials during grievances and appeal processes per Randolph–Sheppard **Act**, 20 U.S.C. §

5) Whether the Respondent violated Title IX of the Education Amendments Act of 1972 law that states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance

**LIST OF PARTIES**

1) UNITED STATES DEPARTMENT OF EDUCATION, Respondent;

2) ILLINOIS DEPARTMENT OF HUMAN SERVICES, Respondent;

3) BUREAU OF BLIND SERVICES, DEPARTMENT OF

   REHABILITATION SERVICES. Respondent

[x] All parties appear in the caption of the case on the cover page.

[ ] All parties **do not** appear in the caption of the case on the cover page. A list of all parties to the proceeding in the court whose judgment is the subject of this petition is as follows:

## TABLE OF CONTENTS

QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . ...............i

LIST OF PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CONTENTS . . . . . . . . . . . . . . .. . . . . . . . . . . . . ...iii

APPENDICES . . . . . . . . . . . . . . . . . . . . . . . . . .. .............iv

Appendix a. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .a

Appendix b. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .b

Appendix c. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .c

Appendix d. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .d

Appendix e. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .e

Appendix f. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ....f

MISCELLANEOUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .v

Letter of Threat. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .g

Motion to disqualify final arbitrator. . . . . . . . . . . . . . . . . . . . . . . .h

OPINION. . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . .. . . vi

LIST OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .vii

JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . ... .viii

CONSTITUTIONAL PROVISIONS, STATUTE
    i.    AND REGULATIONS AT ISSUE . . . . . . . . . . . . . .. . . . .. xiv
REASON WHY CERTIORI SHOULD BE GRANTED. . . . . . . . . . . . . .xv

STATEMENT OF THE CASE . . . . .......... . . . . . . . . . . . . . . . . . ...xvi

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . ... . .....xvii

PROOF OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .xvii
.....

APPENDIX A

1)   In the case of Calvette Brown Vs. The United States Department of Education RS/10 April, 2016, Judge Jack P. Cerone never issued timely opinion.  After four month past due Arbitrator ordered a third re-bid.

### IT IS THEREFORE ORDERED:

*There shall be a new bid process open to all eligible bidders to be screened as per the*

*Randolph-Sheppard Regulations and Code with a selection Committee of four different*

*panelists none of whom sat on the first or second bid process. The procedure shall*

*commence immediately after the parties receive this decision and shall be completed*

*within sixty (60) days thereof.  This panel of arbitrators shall retain jurisdiction over*

*this case until the process for the bid has been completed and the successful bidder has*

*been presented with his or her contract.  Date:*   *4/18/2016*

*Jack P. Cerone, Arbitrator, Chairman*                              */ /*

*(Jack P. (Cerone, Arbitrator, Chairman*

*Gregory Brown, Arbitrator*

*Brooke Lierman, Arbitrator*

iv

## APPENDIX B

In the case of Calvette Brown Vs. Illinois Department of Human Services RS 10 2012, Arbitrator Reiko Suber dismissed the matter for want of Jurisdiction while affirming petitioners removal from facility was proper.

*IT IS HEREBY RECOMMENDED THAT:*

*The appeal of whether the impartial hearing officer in appeal 09 VFPB 001 exceeded his authority by ordering a new selection process for the bidding of the Palatine Facility, thereby resulting in the denial of the Grievant's due process and property rights, be dismissed for want of jurisdiction.*

*The decision of the DHS/DRS to deny the Grievant's bid to manage Vending Facility 483 and 496 (the "Palatine Facility"), based on the selection process that concluded on July 2, 2009, be affirmed.*

*The October 12, 2012 decision of the DHS/DRS to no longer permit the Grievant to manage Vending Facility 496 be affirmed.*

*I si Reiko Suber Reiko Suber*

*Impartial Hearing Officer*

b

**APPENDIX** C

In the case of Calvette Brown vs. Illinois Departmentof Human Services RS/12 2013,

Arbitrator William Jordan opinion was no facility should be rebidded unless there is no

successful bidder. The Respondent had this case dismissed.

attorney requests for discovery denied. Arbitrator William Jordon Recommended the

Department of Human Services Reinstate Contract for the Palatine Postal Service to

Calvette Brown and mediate award and backpay. Adding that there is a rule which

states "a facility should not be rebid unless there is no bidder which scored above 60"

c

**APPENDIX D**

In the case of Calvette Brown Vs. The United States Department of Education  RS/09

2016, Judge Jack P. Cerone issued an opinion to dismiss the case for want to hear

entire scope for there were pending grievances on the state level.

*DECISION AND AWARD*

*This Panel therefore, has come to £ unammous decision -to uphold the hearing*

*officer's decision to summarily dismiss the Petitioner's appeal of another vendor's*

*evidentiary hearing.Further, the Petitioner's request for costs and attorney's fees is*

*also denied, since these expenses were incurred by Petitioner*

*erroneOTJslypursuing the wrong course o^^ that the grievance procedure was the*

*proper and quickest route to take.*

£?g^? A%&*<4^ _____     Date: /a ~ /£- -/<?

-S^^'alt-^ .     ' ""ate /d-/'€-/o '

IA)I£&*-> Afr&Lj? _____     Date:  '/*-/fV<fr

William Wtffln, Arbitrator

d.

## APPENDIX E

In the Case of Calvette Brown Vs. the Illinois Department of Human Services RS/09 2009, Arbitrator Kathleen Yanias dismissed the hearing for want of jurisdiction and wrong course of action. Disputing that a vendor could not grieve any matter

> *I recommend that the DHS Motion to Dismiss be granted as the Grievant does not have the right to appeal another grievant's decision pursuant to III. Adm. Code Section Section 510 et seq. I recommend that Grievant's rights to appeal any decision that affected her with regard to the bidding of the facility in question should be through her direct appeal of the rebidding process which resulted in the recission of her contract and the awarding of the contract to another vendor on July 17,2009.*

> *September 23, 2009*

> */Katjileen C. Yannias ᵞ Impartial Hearing Officer /*

e.

**APPENDIX F**

In the Case of Marco Gianotti vs the Illinois Department of Human Services 6/01/2009. This finding brought about initial breach of contract awarded to Calvette Brown and reawarded to Marco Gianotti (unsuccessful bidder) I conclude that Grievant has met his burden of proof to show that the selection process did not result in an objective or fair result. (Note that I do make no findings that the process itself is flawed as set out in policy and procedures, nor do I make any findings that Ms. Brown should NOT have been selected by an objective process.) Grievant Marco Giannotti has met the burden of proof required by rule, a preponderance of the evidence, to prove that selection process was not impartial or objective. Therefore, I find in favor of the Grievant The scoring of Grievant and the other applicants on January 28, 2009, is invalidated and shall be redone through another interview process. The Selection Committee shall consist of Mr. Cunningham, Messrs. Dwyer and Anderson, and a VR Rehabilitation Counselor other than Ms. Shanks. If any of the named Selection Committee members believe that his participation in the selection is now biased because of participation in this hearing or testimony given, he should recuse himself and another member selected. If any of the named individuals believe another is biased, he should make that known and another selected according to standard procedures. The facility is not to be reopened for additional bids. Only the original four applicants may choose to participate, and must be given the opportunity to participate, if they choose not to, the selection shall be made among the remaining applicants. Should Grievant disagree with my decision, any further appeal of this matter may be made by filing an arbitration complaint with the Secretary of the U.S. Department of Education. 34 CFR §395.13; *see, also,* 89 Ill. Adm. Code § 510.80(0 and 510.120(c). Grievant may also file an appeal to a court under the provisions of the Administrative Review Law. 20ILCS 2420/7.

## MISCELLANEOUS

### Objection to the Arbitrator's (Jack P.Cerone)Authority

### to Decide the Dispute of Calvette Brown vs Illinois department of human service Rs/10

### 13/10

*Filed April 5, 2016, Calvette Brown (grievant, pro se)*

*I Calvette Brown(grievant) & Gregory Brown (arbitrator) formally object to the jurisdiction of the arbitrator, Jack P.Cerone to award and decide the dispute of Calvette Brown Vs. Illinois Department of Human Services RS/10, 13/10. Arbitrator Jack P. Cerone received the transcripts on December 10, 2015 and should have decided an award by February 10, 2016. He has not meet the timeliness of this particular case and should therefore be removed, disqualified from the above said hearing and not to preside over future matters in the case where Mrs. Brown is grievant and the State of Illinois is a participant. He has not only met the timeliness of the matter and does not have the liberty to decide any matters that would be adverse to the State of Illinois (his license holders/associations), neither should an extension be accepted by the department due to lack of timeliness. Neither should he be allowed from this date moving forward, April 5, 2016 to enter an award, decision, opinion or preside over any matters including Calvette Brown. We are entailing with submission of this document within the embodiment of the email, a email from Jessica Durkin with an attachment of the transcripts to Jack p. Cerone dated December 10, 2015.*

*Jurisdiction*

*This matter has been filed in a timely manner:*

*Before the award and decision of the said above matter has been rendered*

*After the 60 day timeframe allotted arbitrators. Arbitrator Cerone was in receipt of the transcripts as of December 10, 2015. via e transfer (attached within this filing email)*

*Service List John King (Secretary of the United States Department of Education)*

*Janet LaBreck (Commissioner of the United States Department of Education)*

e.

v.

Letter published by Mr. Donald Anderson executive panel interviewer and long standing

committee member serving alongside Marco Gianotti (unsuccessful bidder) towards Plaintiff

## SELECTION PROCESS? OR: THE SELECTION PROCESS SAUSAGE MAKING

### By: Dannie Anderson

It is no longer a well-guarded secret that the big,

bad, super-duper strategy on getting a facility in this

program involves sucking up to those *on* the ICBV. That

includes yours truly, John, and all the other high

falootin', butt kissin', back scratchin' schmucks who are

*on* the *Illinois Committee of Blind Patronage Vendors.*

Along with the power hungry cut-throats in the SLA, we

convene in *an* ultra private skull-and-bones society

session to select exactly which of you, (and ourselves,

when we need to), will move up in this program.

during these mysterious and dark secret meetings,

we shroud our-selves in dark heavyweight soft cotton

bath robes and light various incense and candle

Combination, depending on the seasonal specials at

the secret society dollar store. We may be evil, but

we're not crazy with the money. Once assembled in our

hidden bunker deep below the James R. Thompson

Center, the vendor illuminati begin our work. Dick

Cheney always begins the ceremony with various evil

prayers to get us in the mood. We then really settle in with deep and ugly chants to

gain focus, including the Elvis classic, *"Return the*

*Vendor" and* the timeless *"Aunt Bee"* Then, former

Governor Biagojevich grabs the magic eight ball and we have at it.

Should "so and so" get this facility? Shake, shake,

shake- "try again/' Did "so and so" address any aspect

of explaining why they haven't paid CS1 in the past

three months? Shake, shake, shake--"No." Does this manager even know how to spell "route"? Shake,

shake, shake—"Don't bet on it." Did this person deserve

their certification even though they really aren't

qualified? Shake, shake, shake—"A/o." There sure are a

lot of *"No's"* in the magic 8 bail, but that's the way we

roil. After all, the deck is stacked against you, remember, silly? It sure is silly isn't it? What i just

wrote and you just read is closer to what some people around here actually believe about our

selection process than you might think. These sour grape eaters would have you believe that there is

indeed, and ICBV illuminati that must be pacified in order to get you a facility or move up the food

chain. Let me be clear; the people on this committee work on *your* behalf. We really do it out of love

and concern, not only for where this program goes, but also for each individual, it routinely costs

many of us on the board money, time and advancement sometimes. You see, in order to advocate for you this board has to ) stick its neck out, and sometimes that creates friction with the SLA and even with our friends and board members. There exists a far greater chunk of waste-heads than i ever thought could exist in a program that ) generally celebrates our disabilities. Some of you, however, are professionals at sitting on your butts and crying foul at the drop of a dime. You play the consummate victims, well studied in turning 3 reasonable thought on its ear, as if it were an obstacle you simply squashed. You play some SLA staff and managers off. That, in turn, puts them on guard and at times not 3 acting in our "program's" best interest, but rather in your interest alone. I suppose that you were born to do it, but now you are standing in the way of progress, and *boohoo* for you sun<u>shine</u>. Baby's *gonna cry <u>cause</u>* your time is over. Some of ydu~have big mouths and no brains. You have, at times, successfully distracted *many* of us from the real problems that plague the selection process and the program at large. Gratefully, there are the vast majority of us who know nothing of this type of mentality. Those of you crying foul. for the sour grape eaters, you fools really need to get over yourselves and come see how the sausage is made. Many people give back, but not all, some take. see what *positive* thinking and well meaning, sometimes selfless, actions can do for you and your program. It is high time we pulled together, not apart. As for my tongue lashing above, there are so many of us who are just plain tired of distractions of victimization.i am blowing off steam to get your attention, and maybe the next time someone tries to play the blame game with unfair accusations and sinister innuendo your fellow blind managers will stop them and offer advice to truly get to the bottom of their issue. There is no hidden agenda on the part of your ICBV My larger point *here* is that the waste-heads are again trying to distract from the real problem in the selection process. There are currently two blind managers, the Director of Training and Personnel and Vocational Rehabilitation counselor on the selection panel. The selection process is tainted by the insistence in the 650 rules that the VR staff, who simply do not know the first thing about the food service business, be a part of our selection and advancement

There are also many examples of improper behavior on the part o a few VR counselors while serving

on this panel.

In most cases, however, the VR staff is put in an awkward position that they didn't sign up for in the first place. Their lack of training to serve on the panel, understanding of the technical aspects of our program.

and the interruption to their busy schedules ail point to one very obvious solution: to remove VR from the process of vendor selection. To that end, the ICBV ) put forward two motions:

1. The ICBV demand that the SLA introduce into the current 650 rules realignment process, or reopen a separate 650 rules process, to change the selection process to remove the seat of the Vocational Rehabilitation counselor from all future vendor selection panels. This will bring the Illinois SLA into compliance with the views expressed by the RSA audit. The ICBV wishes to avoid, but will boycott, all future selection processes that include a VR counselor if *need* be.

2. The ICBV recommend to the SLA that the SLA

introduce into the current 650 process or reopen a new 650 rules process to change the makeup of the selection panel to reflect a more objective and sensible body consisting of the chairman (Director of Personnel) and four licensed blind managers, and that the process be further modified by removing the high and low scores from the selection panel's review of each-candidate bidding on a facility. The SLA response came a few days later: *The SLA is not prepared to respond to the motions at this time. We would like to receive a ruling on a pending grievance. We feel the finding from the grievance is crucial in making an informed response. As to modifying the 650 rules and policy office advise us*

*;not to interrupt the approval process of the rules at this time. If we were to change anything, it would be in the form of an amendment. Other options could be not changing the rules concerning the selection pane, but changing the selection committees procedures instead We are keeping an opened mind, and once we receive a detailed finding from the hearing officer the SLA will respond to the two motions.* Regardless of the outcome of the grievance, which has to do with an injustice committed by the VR counselor which sat on the panel, the ICBV expects to have the selection process changed according to the motions above. God bless us all as if looks like the SLA may actually push to keep the VR counselor on the panel, I certainly hope not. 1 can't imagine a compelling argument to keep VR involved in the actual selection [0] process unless we were to allow VR staff in the room as an observer to the process. The recent RSA audit also finds that the VR position on the selection process may involve a conflict of interest in the first place prevents VR from serving on *our* selection. if we are forced to continue in this way, i would love to forward some new rules for selection of VR staff and their advancement in state government that involves blind managers sitting on a panel in judgment of their career. Oh, but that sounds kind of stupid, doesn't it? *Yes it does,*

g.

OPINIONS

Petitioner respectfully prays that a writ of certiorari issue to review the

judgment below

DATE OF LAST DECISION 4/18/2016 Calvette Brown vs. Illinois Department

of human Services, RS/9/RS10 (2015) case presided by Jack P. Cerone via the

United States Department of Education captioned in appendix.................. a

Calvette Brown vs. Illinois Department of human Services, case dismissed by

Reiko Suber via the Illinois Bureau of administrative hearing RS/09 RS/10

(2014) captioned in appendix...................................................... ......... .. b

Calvette Brown vs. Illinois Department of Human Services RS/12 2013 presided

by William Jordan via the Illinois Bureau of administrative hearing request for

information via FOA not responded to captioned in appendix ....................c

Calvette Brown vs. Illinois Department of Human services R/S 9 (2010) presided

by Jack P. Cerone via the United States Department of Education published

Under section 6(c) of the Randolph-Sheppard Act (the Act), <u>20 U.S.C. 107</u>d-2(c),

the Secretary publishes in the Federal Registar captioned in appendix .........d

Calvette Brown vs Illinois Department of Human Services R/S 9(2009) presided

by Kathleen Yannias via the Illinois Bureau of administrative hearing. .

captioned in appendix..................................................................... . . .. e

Marco Gianotti Vs Illinois Department of Human Services presided by Micheal

Becker via the Illinois Bureau of administrative hearing R/S/09/

2009) captioned in appendix.............................................................f

vi

LIST OF AUTHORITIES

Under section 6(c) of the Randolph-Sheppard Act (the Act), 20 U.S.C. 107d-2(c), the Secretary publishes in the Federal Registar. Case study shows relief was awarded when rebidding of facility was rendered as a form of relief. Example as follows

TERRY WARD VS. OHIO REHABILIATION SERVICES FOR THE BLINDOn March 21, 2003, the SLA announced a vacancy at Facility #531, a collection of four bagel shops located in buildings 28, 556, 558, and 560 at the Wright-Patterson Air Force Base in Dayton, Ohio. The bid announcement indicated that all applicants were to submit a business plan with their application. On April 1, 2003, complainant applied for a position at Facility #531 and complied with all aspects of the bid announcement. Following the bid closing, complainant and another vendor were both being considered for Facility #531. Complainant alleged that the SLA applied its transfer and promotion policies incorrectly. Complainant contended that there are six specific criteria that the SLA normally uses to rate candidates on a scale of 1 to 10. Additionally, an interview is also required. Complainant alleged that the SLA's selection committee used a different scoring system, rating each of the criteria on a scale of 1 to 100 instead of 1 to 10. Complainant further alleged that a member of the selection committee had a conflict of interest. Specifically, complainant alleged that the selection committee member was interested in becoming the manager of the location that would be vacated by the other candidate, thus, making the selection committee biased toward the other candidate to be named the manager of Facility #531. Complainant asserted that his scores in training and the fact that he has 120 semester hours of college education made him the more qualified candidate for Facility #531. Complainant filed a grievance against the SLA on this matter. A hearing on the grievance was scheduled for March 15, 2004, but was later cancelled. The parties were instructed by the hearing officer to submit to him written briefs on complainant's grievance. On July 23, 2004, after reviewing the briefs, the hearing officer denied complainant's grievance in its entirety. On September 27, 2004, the SLA

adopted the hearing officer's order as final agency action. Complainant sought review by a Federal arbitration panel of that decision.The issue heard by the panel was whether the actions taken by the Ohio Rehabilitation Services Commission, Bureau of Services for the Blind concerning the selection process for Facility #531 at Wright-Patterson Air Force Base were in accordance with the Act, implementing regulations and State rules and regulations regarding the operation or administration of the Randolph-Sheppard vending facility program.

After reviewing all of the records and hearing testimony of witnesses, the panel ruled that the SLA violated the Act, implementing regulations, and State rules and regulations in conducting the selection process for Facility #531. The panel issued a four-part ruling as follows: (1) The SLA must conduct another selection for Facility #531; (2) Individuals who served on the previous panel are ineligible to participate in the new process, and only the complainant and the other vendor are eligible to be considered as candidates; (3) In evaluating the two candidates, the SLA is prohibited from considering the experience of the other vendor who is currently operating Facility #531; and (4) The SLA must reimburse the complainant for all attorney fees and other costs that he incurred with his complaint. The amount must include all cost and fees from the time that the selection committee awarded Facility #531 to the other vendor.Show citation box

vii

**JURISDICTION**

1. The abuse and mistreatment for the plaintiff and blind non-elected minority vendors at large is unconstitutional as it determined that this disparity of treatment is clarity of discrimination on many accounts.

2. Majority opinion is necessary and appropriate since the opinion conflicts with a decision of the United States Department of Education and also conflicts with affirmations and the constitutionality of the rights of disabled people. Moreover, because the Majority panel's error is so clear, and the violence of Elected officials for the Randolph Sheppard program is so prevalent towards non elected vendors, Petitioner respectfully submit that the Court may wish to summarily reverse the United States Department of Education decision.

3. Therefore, the majority's opinion in this case is in direct conflict with the mission statement of the Randolph Sheppard act and is also in direct conflict with statements the United States Constitution as mentioned below. The entire Mission statement of the Randolph Sheppard program per federal and state mandate is: The Vending Facility program authorized by the Randolph-Sheppard Act provides persons who are blind with remunerative employment and self-support through the operation of vending facilities on federal and other property. The program, enacted into law in 1936, was to take away their means of income and rights in the administering of the program by the State Licensing Agency and the United States Department of Education.

viii

## CONSTITUTIONAL PROVISIONS, STATUTES AND

## POLICIES AT ISSUE

1. Fourteenth and Fifth Amendment To The United States Constitution Due Process guarantee that no person shall "be deprived of life, liberty, or property, without due process of law a forehand.

2. American Disabilities Act of 1973 and 1974 amendments were added to the Randolph Sheppard Act and ADA one of which mandated the creation of an elected committee of blind vendors in the Randolph Sheppard program for blind vendors. The Committee's role would be to advocate for, protect the rights of, and represent Blind Vendors across the United States.

3. Title IX of the Education Amendments Act of 1972 is a federal law that states: "No person in the United States shall be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

5. Randolph Sheppard Act 20 U.S.C., section 107-b, 107d, awarding of facilities 650.90, vendor appeals and grievances 650.10, 650.130ILCS

6. 34 C.F.R.395.13, 650.90, conflicts of interest

7. Illinois blind vendor Act, 20 ILCS 24/2150

8. 89 111 Admin. Code 510.20, 510.30 and 650.130 rules for selection process

9. Civil Rights Act of 1964

xiv

## REASONS WHY CERTIORARI SHOULD BE GRANTED

1.Review Is Warranted Because the administration of the entire Randolph Sheppard program for blind vendors and its selection process for awarding contracts to blind vendors has been and is non inclusive to blind minority and non-elected blind vendors at large.

2. Review is Warranted because it is imperative public importance as to justify deviation from normal appellate practice and to require immediate determination in this court

3. Review Is Warranted Because Of The National Importance In Determining Whether The Blind Vendors Constitutional, ADA and Randolph Sheppard rights, Rules, Codes and Regulations are being violated

## PETITION FOR A WRIT OF CERTIORARI

petitioner Calvette Brown respectfully submits this Writ of Certiorari and prays

that the supreme judges of the court will hear the matters at hand.

Some familiarity with the structure of the Randolph-

Sheppard Act and the manner in which it provides for resolution

of disputes, awarding of facilities and advocacy is necessary to understand the

sequence of events in this case. We briefly provide the relevant background.

The Randolph-Sheppard Vending Stand Act, 20 U.S.C. §§ 107-107f, establishes

a cooperative federal-state program that provides employment opportunities for

the blind.   The Act grants priority to blind persons who desire to operate

vending facilities on federal property.   20 U.S.C. §107(b). (2).   In addition, the

state agency must:make application to the Secretary and agree-. (6)  to provide

to any blind licensee dissatisfied with any action arising from the operation or

administration of the vending facility program an opportunity for a fair hearing,

and to agree to submit the grievances of any blind licensee not otherwise

resolved by such hearing to arbitration for blind persons who wish to operate

vending facilities on federal property. *See* 20 U.S.C. § 107. The stated purposes

of the

Act are "providing blind persons with remunerative employment,

enlarging the economic opportunities of the blind, and

stimulating the blind to greater efforts in striving to make

themselves self-supporting." , § 107b-1; The SLA must also conduct a biennial

election of a Committee of Blind Vendors

to represent and advocate for all blind licensees in the state program, § 107b-1(2); cooperate with the Committee in the training of blind licensees, § 107b-1(3); disburse vending machine income to licensed blind vendors according to a particular formula, § 107d-3; 34 C.F.R. § 395.8(a)-(b); and use any remaining vending machine income to establish retirement and other benefits plans for the blind and to purchase, maintain, and replace vending equipment, 20 U.S.C. § 107d-3(c); 34 C.F.R. § 395.8(c). The state licensing agency, is governed by the procedures set forth in §§ 107b(6), 107d-1(a), 107d-2(a), and 107d-2(b)(1) of the Act. At the request of any blind licensee who is dissatisfied with the operation of the program, the state licensing agency must give the blind licensee a full evidentiary hearing. 20 U.S.C. §§ 107b(6); 107d-1(a). If the blind licensee's grievances are not resolved by such a hearing, the blind licensee "may file a complaint with the Secretary who shall convene a panel to arbitrate the dispute." § 107d-1(a).**1**

**1**Section 107d-1(a) provides, in full:

**2**Section 107d-1(b) provides, in full:

(b) Noncompliance by Federal departments and agencies; complaints by State licensing agencies;

**3**Section 107d-2(b)(1) provides, in full:

this petition for a writ of certiorari to review the judgment of the State of Illinois Department of Human services,

traditional strict scrutiny applies when a state agency's use of elected committee members with conflicts of interest, threats and racial preferences in its selection process and the State of Illinois constant re-bidding of awarded contracts because of a dissatisfied vendor and violating procedures and policies in its operation causing violations of another vendors constitutional rights is challenged.

A panel of the State of Illinois, Bureau of administrative hearings and the United States department of Education failed to apply

traditional strict scrutiny in regards to this Federally funded program.

Essentially ignoring the

policies and procedures governing the program as well as constistutional rights articulated in the Equal Protection Clause, due process, Randolph Sheppard policies and United states constitutional rights and interest to its blind citizens. The panel dismissed the grievances and appeals.

The interest is based on withholding employment opportunities, representation and threatening less-privileged applicants women and minority communities.

If not reviewed, the State of Illinois bureau and the United states department of Education decision will signal

to all blind vendors and courts throughout the nation that strict scrutiny is a *pro forma* exercise and that *Randolph Sheppard Program* is a green light for racial preferences, threats and violations of vendors constitutional rights in its selection processes, lack of implementation of program policies and procedures for facilities.

The Court should grant the petition, strike down the Randolph Sheppard

## STATEMENT OF THE CASE

In April 2016 arbitrator Jack P.Cerone issued an untimely opinion ordering the State of Illinois Department of human services to breach blind vendor Calvette Brown's postal facility contract which she had been running for four years and rebidded it for a third time simply because another elected official for blind vendors desired the contract. The Palatine contract was initially awarded to Calvette Brown but an elected committee vendor (Marco Gianotti) grieved the award and the hearing officer ruled in the unsatisfied elected official/vendor favor thus voiding and breaching Calvette Brown contract. Calvette Brown filed a grievance to maintain her job duties but her hearing was dismissed with the opinion of hearing officer State of Illinois hearing officer Kathleen Yannias reasoning that a blind vendor cant grieve another vendor contract regardless of the fact that the Randolph Sheppard act states "a vendor can grieve any action". Calvette Brown appealed the decision to the United States department of Education. Upon her filing an appeal, elected committee official as well as interviewer for the first and second interview processes (Donald Anderson) wrote an article threatening her and the entire actions of the SLA to initially award her a contract. Calvette Brown then filed a second appeal for conflicts of interest, denial of advocacy, violence towards vendors and state employees/officers by elected officials ,discrimination, violation of due process and disparity of treatment in a federally mandated program, The United States Department of Education dismissed her first appeal for want to hear the entire scope entailing the article of threats and conflicts of interest appeal. Calvette

Brown's postal facility contract was rebidded with the inclusion of the first initial panel/interviewers as well as Mr. Anderson who wrote the letter of threat. The vocational rehabilitation counselor was removed which was in violation of the Randolph Sheppard selection processes. Upon hearing the matters of the entire scope the State of Illinois department of human services dismissed the case again for want of jurisdiction affirming removal of the vocational rehabilitation counselor was proper and the constant termination of a blind vendor contract continuously was proper. Calvette Brown was removed from the Palatine postal facility. Four years 2016 later arbitrator Jack P Cerone as stated above agreed the entire process was flawed and not only had Calvette Brown been wrong but the State of Illinois had been wronged as well but his only order was to breach her contract again and rebid it.

## STATEMENT OF FACTS

1.  DHS is the State Licensing Agency ("SLA") designated by the Federal government, and authorized by the State of Illinois, to administer the Randolph-Sheppard program within Illinois. 20 ILCS 2420/6. Within DHS, the SLA's responsibilities are carried on through DRS-BEPB. Through the BEPB, which is administered by the BBS, the SLA trains and licenses qualified blind persons to manage vending locations within the state. It also develops and awards federal, state and private locations for operation by blind vendors and counsels vendors in operations.

2.  Blind Vendors who are interested in managing open vending facilities submit a "bid application form" as well as certain selection process materials with information on their qualifications. They are then are interviewed by a selection committee (the "Selection Process"). 89 Ill. Admin. Code section 650.90(c) establishes that the selection committee is to be chaired by the DHS-DRS Supervisor of Personnel and Training, and must consist of a DRS vocational rehabilitation counselor for the blind and two vendors agreed upon by the chair of the selection committee and the chair of the Illinois Committee of Blind Vendors ("ICBV"),

3.  In addition to the applicants' bid application forms, selection committee members are provided with the applicants' most recent annual evaluation, their profit and loss statements for the preceding 12 periods, an optional written self-analysis, the bid announcement for the facility,

rating forms, and proposed questions developed by BEPB staff and/or the selection committee. 89 Ill. Adm. Code section 650.90(c)(2).

4. The selection committee assesses each applicant on 14 criteria, which include customer relations, business practices, reliability, discipline, work experience, physical stamina, operational skills, and financial management skills. 89 **111.** Adm. Code section 650.90(d).

5. The facility is awarded to the most qualified applicant with the highest average rating above 60%. 89 HI. Adm. Code section 650.90(e). The facility is to be rebidded if there is no bidder who scored above 60%. The Plaintiff scored above 60%. The Dissatisfied (initial grievant) scored below 60%. The Grievant is a blind vendor who has been trained and licensed by the BEPB.

6. On December 18, 2008, the BEPB issued a bid announcement for licensed blind vendors who desired to service the vending machines at the U.S. Postal Facility on Northwest Highway in Palatine, Illinois, which was comprised of Facility 483 and 496 (in aggregate, the "Palatine Facility").

7. The Grievant and 3 additional blind vendors ("Bidder 2", "Bidder 3", and "Bidder 4"), bid on the Palatine Facility. Interviews before the selection committee were held on January 28,2009 (the "First Bid").

9. The selection committee was comprised of the Supervisor of Personnel and Training for the BEPB ("Supervisor"), a vocational rehabilitation

counselor for the blind, ("VR Counselor") and 2 blind vendors ("BV 1" and "BV 2", respectively).

10.    On February 10, 2009, DHS/DRS awarded the contract for the Palatine Facility to the Plainfiff.

11.    On February 20, 2009, Bidder 2 (also a long term elected committee member alongside panel member BV! And BV) filed a grievance alleging that DHS/DRS had improperly denied his request to manage the Palatine Facility. This appeal was captioned as 09 VFPB 001.

12.    On May 14, 2009, appeal 09 VFPB 001 was heard before an impartial hearing officer. As a result of that hearing, it was determined that the First Bid was neither impartial nor objective. The impartial hearing officer recommended the entry of the following order:

> The scoring of [Bidder 2] and the other applicants on January 28, 2009, is invalidated and shall be redone tlirough another interview process. The Selection Committee shall consist of [the Supervisor], [BV 2) and [BV !], and a VR Rehabilitation Counselor other than [the VR Counselor]. If any of the named Selection committee members believe that his participation in the selection is now biased because of participation in this hearing or testimony given, he should recuse himself and another member selected. If any of the named individuals believe another is biased, he should make known and another selected according to standard procedures.
>
> The facility is not to be reopened for additional bids. Only the original four applicants may choose to participate, and must be given the opportunity to

participate. If they choose not to, the selection shall be made among the remaining applicants.

14. On or around June 4, 2009, The Director of the Division of Rehabilitation Services adopted the findings of the impartial hearing officer in a Final Administrative Decision.

15. Pursuant to the order set forth in the Final Administrative Decision, the Palatine Facility was reopened for bidding to the Grievant, Bidder 2, Bidder 3 and Bidder 4 pursuant to another selection process (the "Second Selection Process"). The initial interviewers returned. The vocational rehabilitation counselor was removed thus violated Randolph Sheppard provisions

16. On June 9, 2009, the Grievant filed an appeal contesting her breach of contract and violation of her due process rights issued in 09 VFPB 001Her appeal was captioned as 09 VFPB 002 and was amended on or around June 10, 2009 and June 22, 2009 to include discrimination, conflicts of interest and non partiality of hearing officers.

17. The basis of the Grievant's appeal was that the decision reached in Bidder 2's Case resulted in the denial of her due process rights.

18. On May 26, 2009 "BV2" wrote a derogatory article targeting Plaintiff

19. The Grievant testified that the article, "Just What Are Your Chances in the Selection Process? Or: The Selection Process Sausage Making; Outside

of the Shadows and Into the Light!" (the "Article") was published in May, 2009. BV 1 was the Article's author as well as the selection panel/interviewer, as well as an elected committee member alongside "bidder 2". who quoted threatening words to the Plantiff about the selection process and the grievance process attacking plaintiff as well as the state licensing agency policies and procedures.

20. On July 2, 2009, the Grievant, Bidder 2 and Bidder 3 again interviewed for the Palatine Facility (the "Re-bid Interviews").

20. The required Vocational Rehabiliation counselor was removed. At the conclusion of the Second Selection Process, members of the Second Selection Committee recorded the following scores: The selection committee was comprised of the Supervisor, BV 1, BV 2 and the Assistant Bureau Chief for the BBS (the "Second Selection Committee"). The interviewers BV1 and BV2 returned for second interview.

|  | Bidder 2 | Plaintiff | Bidder 3 |
|---|---|---|---|
| Supervisor | *79* | 83 | 73 |
| Assistant Bureau | 84 | 88 | 84 |
| BV 1 | 94 | 86 | 82 |
| BV2 | 78 | 71 | 69 |
| TOTAL | 335 | 328 | 308 |
| **AVERAGE** | **83.75** | 82 | **77** |

21. On or around July 17, 2009, DHS/DRS awarded the contract for the Palatine Facility to Bidder 2 because he was determined to be the most qualified applicant based upon the Second Selection Process.

22. On July 22, 2009, the Grievant filed a grievance alleging that DHS/DRS had improperly denied her request to manage the Palatine Facility. This

appeal was captioned as 09 VFPB 003 ("Appeal 3").

23.     On July 24, 2009, DHS/DRS filed a motion to dismiss 09 VFPB 002
        ("Motion"). In it, DHS/DRS asserted that the Plaintiff sought to appeal a
        no n-appeal able issue.   However plaintiff did not appeal another
        grievant appeal but she did in fact appeal dhs action of breaching her
        contract.

24.     On September 23, 2009, the impartial hearing officer determined that
        appeal 09 VFPB 002 should be dismissed because the Grievant did not
        have the right to appeal another Grievant's decision.)   In spite of rules
        saying a vendor can appeal "any" action of DHS.

27.     On July 26, 2009 Plaintiff filed an appeal for with the Department of
        Education *("DOE")* seeking the appeal of the Dismissal alongside a
        protest for the reinterview process for removal of the vr counselor,
        conflicts of interest in reordering same panel members and violence and
        threats alongside constant rebid/ breaching contracts, discrimination
        and violation of due process rights. The Grievant also argued that the
        impartial hearing officer's recommendation exceeded his authority. The
        hearing officer allowed the amendment. As well as denial of
        representation from the elected committee which consisted of Bidder 2
        and BV1 and BV 2/interviewers.   They were representing "Bidder 2"
        only.

28.    On February 2, 2010, the DOE granted the Grievant's request for arbitration, but determined that the only issue was whether DHS wrongfully dismissed her attempt to appeal a decision rendered in another blind vendor's evidentiary hearing.

30.    On July 21, 2010, arbitration R-S/09-3 was heard before a tripartite panel (the "Panel").

31.    On or around October 18, 2010, the Panel issued its decision upholding the Dismissal. The Panel noted, in relevant part:

> [Grievant] has a course of action that she initially started to go toward i.e. the filing of her grievance in opposition the decision to award the contact to [Bidder 2], if [hat grievance is denied she can request arbitration. The Attorney General Office of the State of Illinois through its assistants have confirmed that there would be no issue raised against her as to timeliness on that grievance and she would be permitted to run her contract while her cases were being heard...

32.    However On October 31, 2012, the BEPB informed the Grievant that she would no longer be permitted to manage Vending Facility 496.

33.    On October 31, 2012, the BEPB informed Bidder 2 that he would be permitted to manage the Palatine Vending Facility.

34.    On November 29, 2012, the Grievant filed an appeal contesting the

DHS/DRS decision to no longer permit her to manage Vending Facility 496. This appeal was captioned as 12 VFPB 003.

35. On November 16, 2015 "The United States Department of Education Heard the entire scope of the matter..

36. On April 5, 2016 The United States Department of Education presided by Arbitrator Jack P. Ceronne submitted an untimely decision, admitting his hands were tied and ordered the Palatine Postal facility under permanent agreement to Calvette Brown Randolph Sheppard blind vendor be re-bidded out and re-interview for the third time without rendering award or damages to plaintiff as with the Terry Ward vs Ohio Rehabilitation Services for the blind.

29. On September 25, 2009, the Director of the Division of Rehabilitation Services adopted the findings of the impartial hearing officer in a final administrative decision by dismissing appeal 09 VFPB 002 (the "Dismissal").

30. The Grievant filed a request for arbitration

**CONCLUSION**

1.      In 2009, Ms. Calvette Brown, filed a certain grievance related to the rebidding process in regard to the vending location at the U.S. Postal Facility in Palatine, Illinois

2.      The rebidding process, and the interview process thereon which occurred on or about July 2, 2009, was flawed before it ever began. For, the Department adopted, without question, the June 4, 2009, decision of a Hearing Officer Michael Becker to rescind the contract awarded to Grievant. In that decision, Mr. Becker concluded that the prior scoring of applicants was not an "objective" one, based on the scoring of one particular Selection Committee member, Gina Shanks, even though, based on the testimony of the original committee members, Mr. Becker made no finding that Ms. Shanks had a conflict of interest, or that Ms. Shanks was biased or prejudiced, for or against any applicant.

3.      In any event, without authority and in an *ultra vires* manner, Mr. Becker ordered that only the four original applicants could participate in the redone interview process and that three of the four original Selection Committee members (i.e., Messers Cunningham, Dwyer and Anderson) would again sit on the "redone" Selection Committee. Although he found no conflict of interest, bias or prejudice on the part of Ms. Shanks, Mr. Becker ordered that a fourth Selection Committee member be named to replace Ms. Shanks.

5.      The fact that Messers Dwyer and Anderson remained on the

new/"redone" Selection Committee after both of them had given clear and unequivocal statements under oath to Mr. Becker that Mr. Giannotti was the "most qualified" and "best" candidate/applicant, deprived the Grievant of all fundamental notions of fairness and due process of law, civil liberties and rights as a disabled person which are guaranteed to her under the due process clause of the Illinois Constitution and under the due process clause of the Fourteenth Amendment to the U.S. Constitution, breach of contract, the ADA act and the Education clauses.

6.    Moreover, in violation of the Department's own rules and procedures for selection of vendors, Mr. Donald (Donnie) Anderson remained on the Selection Committee even though he was obligated to remove himself "from the "redone" Selection Committee, due to his own inability to be fair and impartial and due to his actual and apparent conflict of interest. In that regard, within weeks prior to the "redone" selection interviews and hearing, Mr. Anderson had admitted according to prior testimony that he published an article entitled "Just What Are Your Chances In the Selection Process? or: The Selection Process Sausage Making: Out of the Shadows And Into The Light!", wherein Mr. Anderson scathingly attacked Grievant and vendors as a whole (although not identifying her by name), stating, in part, " .. . boo hoo for you sunshine. Baby's gonna cry cause your time is over." (See, Exh. "A", attached hereto). Another committee member threatened an Illinois SLA staff member several months later in an open forum meeting for blind vendors,  explicably openly informing the Sla employee of his current address

assuring the SLA staff member that he know of his whereabouts if he did not change his position on political matters of the program.;

7.     Because Mr. Becker's June 4, 2009 decision was facially flawed and included an *ultra vire* 's determination of the make-up of the "redone" Selection Committee, the Department's decision to adopt Mr. Becker's decision and to convene a "redone" Selection

Committee consisting of three of the four original committee members (and including at least one biased member with an actual and apparent conflict of interest) deprived Grievant of her state and federally protected rights.

8).  In Conclusion, the final hearing officer who presided over her appeal had every opportunity to restore Ms. Brown and make her whole in all aspects, however he explained that his hands were tied and therefore did not render a decision timely (within a 60 day window) he however after five months of hearing the matter simply ordered another re-interview/rebidding of her facility once again for the third time.

xvi

**CONCLUSION**

The petition for a writ of certiorari should be granted.

Respectfully submitted,

*Colette Brown*

Date: 5/1/2016

No. _____

_____

IN THE

SUPREME COURT OF THE UNITED STATES

_____

Colette Brown _____ — PETITIONER
(Your Name)

VS.

United States Dept. of Education
RESPONDENT(S)
Illinois Department of Human Services

**PROOF OF SERVICE**

I, Colette B. _____, do swear or declare that on this date,
5/1, 20 16, as required by Supreme Court Rule 29 I have
served the enclosed MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*
and PETITION FOR A WRIT OF CERTIORARI on each party to the above proceeding
or that party's counsel, and on every other person required to be served, by depositing
an envelope containing the above documents in the United States mail properly addressed
to each of them and with first-class postage prepaid, or by delivery to a third-party
commercial carrier for delivery within 3 calendar days.

The names and addresses of those served are as follows:
Solicitor General 950 Pennsylvania Avenue Room 5614 Northwest
Washington DC 20530 US Dept. of Education 400 south Maryland
Washington DC. 20202, Illinois Department State Attorney 100 west Randolph
Chicago, Illinois 60601

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 5/1 _____, 20 16

Colette B. _____
(Signature)

## CERTIFICATE OF SERVICE

1. SOLICITER GENERAL OF THE UNITED STATES

Room 5614, Department of Justice

950 Pennsylvania Ave.

N.W., Washington, D. C.

20530–0001

2. UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF REHABILIATION SERVICES

Janet LaBreck, Commissioner

400 South Maryland

Washington D.C 20202


3. STATE OF ILLINOIS DEPARTMENT OF HUMAN SERVICES, DIVISION
   OF REHABILITATION, BUREAU OF BLIND SERVICES, BUSINESS
   ENTERPRISE PROGRAM FOR THE BLIND

States Attorney

100 west Randolph Street

Chicago, Illinois 60601

## CERTIFICATE OF COMPLIANCE

No. 07-

Calvette Brown (Blind Randolph Sheppard Vendor)

v.

UNITED STATES DEPARTMENT OF EDUCATION, OFFICE OF REHABILIATION SERVICES, ILLINOIS DEPARTMENT OF HUMAN SE

As required by Supreme Court Rule 33.1(h), I certify that the petition for a writ of certiorari contains 7,551.00 words, excluding the parts of the petition that are exempted by Supreme Court Rule 33.1(d).

I declare under penalty of perjury that the foregoing is true and correct.

Calvette Brown

5/01/20016

_____



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

**OFFICIAL USE**

WASHINGTON 20509

| | |
|---|---|
| Postage $ | $3.30 |
| Certified Fee | $2.70 |
| Return Receipt Fee (Endorsement Required) | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| | $0.00 |
| Total Postage & Fees $ | $1.78 $7.78 |

Postmark Here 05/04/2016

Sent To _United States department of Education_
Street & Apt. No., or PO Box No. _400 South Manland 2 Ave_
City, State, ZIP+4 _Washington DC 20202_

7014 0870 0000 2960 0131

PS Form 3800, July 2014                See Reverse for Instructions



U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

| | |
|---|---|
| Postage | $3.30 |
| Certified Fee | $2.70 |
| Return Receipt Fee (Endorsement Required) | $0.00 |
| | $1.00 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| | $0.00 |
| Total Postage & Fees | $8.62 |

Sent To: Sollicifer Generale of United States
Street & Apt. No.; or PO Box No. 950 Pennsylvania Avenue
City, State, ZIP+4 Washington DC 20530-0001

7014 2870 0000 0960 0174

PS Form 3800, July 2014        See Reverse for Instructions

